UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62287-COHN/STRAUSS

**CHERI CROWLEY,**

     Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 21] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 24]. This case has been referred to me for further proceedings, up to and including a report and recommendation concerning the case's disposition [DE 4]. I have reviewed both motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 21] be **DENIED** and that Defendant's Motion [DE 24] be **GRANTED**.

## BACKGROUND

### I.     PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits on March 13, 2019, alleging a disability onset date of December 1, 2018 ("Alleged Onset Date"). Tr. 59, 72, 158-64. Her claim was denied initially and upon reconsideration. Tr. 48-72. Thereafter, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on May 26, 2020; a vocational expert ("VE") also appeared and provided testimony at the hearing. Tr. 15-42. On August 3, 2020, the ALJ

issued his decision, finding that Plaintiff was not disabled under the Social Security Act. Tr. 76-85. On September 21, 2020, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on November 11, 2020, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.     PLAINTIFF'S BACKGROUND

Plaintiff, who was born in 1984, Tr. 158, was 34 years old on the Alleged Onset Date and at the time she filed her application for disability insurance benefits. She has a GED and has past relevant work experience as a babysitter and receptionist. Tr. 21, 35-36, 84, 170. Plaintiff alleged disability due to the following conditions: bipolar 1 disorder; schizoaffective disorder, depressive type; and generalized anxiety disorder. Tr. 169.

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence,

or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

### I. THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If no severe impairment is found, then the ALJ will conclude that there

is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. § 404.1520(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. § 404.1520(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 404.1545(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

4

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 404.1569. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted); *see also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

5

## II.    ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled. Tr. 85. Initially, the ALJ addressed some preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 76-78. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date. Tr. 78. Next, the ALJ found that Plaintiff had the severe impairments of depression, anxiety, bipolar disorder, schizoaffective disorder, and substance addiction disorders. Tr. 78. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 79.

The ALJ next assessed Plaintiff's RFC, determining, "[a]fter careful consideration of the entire record," that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to jobs involving simple and repetitive tasks with occasional interaction with the general public, co-workers, and supervisors. The claimant is further limited to jobs with occasional changes of the work setting.

Tr. 80. As part of this assessment, the ALJ noted that he considered all of Plaintiff's symptoms and the extent to which her symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. Tr. 80. Additionally, the ALJ stated that he considered the medical opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c. Tr. 80. He then proceeded to discuss the evidence of record, concluding his RFC analysis with a discussion of, and evaluation of the persuasiveness of, the medical opinion evidence and prior administrative medical findings. *See* Tr. 80-83.

After assessing Plaintiff's RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a babysitter or receptionist. Tr. 84. Therefore, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine whether a significant number of jobs, that Plaintiff could perform, exist in the national economy. Tr. 84-85. Relying on the VE's testimony, the ALJ determined that Plaintiff is able to perform the jobs of laundry worker, hand packager, and dishwasher, jobs for which there are collectively more than 720,000 positions nationwide. Tr. 85. As a result, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work existing in significant numbers in the national economy. Tr. 85. In light of this conclusion, the ALJ found that Plaintiff was not disabled from the Alleged Onset Date through the date of the ALJ's decision. Tr. 85.

## III. ANALYSIS

Plaintiff raises two issues. First, Plaintiff contends that the ALJ erred in evaluating the opinion of Stefania Dannacher, Psy.D. Second, Plaintiff raises a constitutional argument that she contends requires remand for a new hearing before a new ALJ. As discussed herein, both arguments fail.

### A. DR. DANNACHER'S OPINION

Plaintiff has failed to establish any error with respect to the ALJ's consideration of Dr. Dannacher's opinion. Because Plaintiff's claims were filed after March 27, 2017, the ALJ was required to consider the medical opinion evidence and prior administrative medical findings in Plaintiff's case in accordance with 20 C.F.R. § 404.1520c. Under this regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 (11th Cir. 2021) (noting that the

7

requirement to assign weight to medical opinions has been omitted from the revised regulation). Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(a). Although an ALJ is no longer required to provide a specific weight to medical opinions – a requirement under the prior regulation, *see* 20 C.F.R. § 404.1527 – the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be. 20 C.F.R. § 404.1520c(b).

Nonetheless, § 404.1520c makes clear that in doing so, an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). In other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively address the source's opinions or findings in a single analysis rather than including a separate analysis for each opinion or finding. 20 C.F.R. § 404.1520c(b)(1). In doing so, the ALJ must explain how he or she considered the factors of supportability and consistency, but the ALJ is generally not required to explain how he or she considered the other three factors. 20 C.F.R. § 404.1520c(b)(2)-(3). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical

8

finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, Plaintiff initially frames her argument regarding Dr. Dannacher (in Plaintiff's issue heading) as follows: "The ALJ failed to apply the correct legal standards to Dr. Dannacher's opinion." Plaintiff's Motion at 4. To the extent Plaintiff is arguing that the ALJ did not apply the correct legal standard, her argument fails. The ALJ explicitly stated that he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." Tr. 80. As noted above, this is the exact regulation that the ALJ was required to apply. But more importantly than merely identifying the correct regulation, the ALJ specifically addressed the persuasiveness of Dr. Dannacher's opinion – finding it to be "partially persuasive" – and discussed the supportability and consistency factors in conjunction with determining the persuasiveness of the opinion. Tr. 83. Thus, the ALJ's decision shows that he both identified and *applied* the correct standard.[1]

Notwithstanding the way Plaintiff's heading frames the issue, the body of Plaintiff's Motion instead contends that "[t]he ALJ failed to account for Dr. Dannacher's opinion that [Plaintiff] was markedly limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting." Plaintiff's Motion at 7. By way of background, in June 2020 (following the hearing before the ALJ), Plaintiff was referred to Dr. Dannacher for a General Clinical Evaluation with Mental Status Exam. Tr. 82, 572. Following Dr. Dannacher's evaluation of Plaintiff, Dr. Dannacher submitted both a Psychological Evaluation report (Tr. 572-76) and a

---

[1] *Cf. Planas*, 842 F. App'x at 497-98 ("For starters, the ALJ applied the correct regulatory standard in evaluating the medical opinion evidence. The ALJ not only cited the proper regulation, but also articulated her analysis in a manner wholly consistent with the applicable regulation.").

Mental Source Statement of Ability to Do Work-Related Activities (Mental) (Tr. 568-70). In his decision, the ALJ summarized Dr. Dannacher's report in conjunction with the ALJ's discussion of the medical evidence of record, stating as follows:

> In June of 2020, the claimant underwent a psychological consultative examination with Stefania Dannacher, Psy.D. (Exhibit 9F). The claimant was cooperative. Her mood was anxious and her affect was congruent. The claimant was tearful at times. The results of the mental status examination indicated she performed well, and there was no evidence of the presence of cognitive deficits. The claimant was able to encode three unrelated words, demonstrating intact immediate recall. She was able to recall two of three words after a delay. The claimant spelled "world" backwards, named two objects, and obeyed written command. Her performance on the mental status examination did not reveal any evidence of significant cognitive deficits. The claimant was diagnosed with generalized anxiety disorder, unspecified schizophrenia spectrum or other psychotic disorder, and unspecified depressive disorder.

Tr. 82.

The ALJ then proceeded to discuss the opinion evidence and prior administrative medical findings. In doing so, the ALJ explained that Dr. Dannacher opined (in the Mental Source Statement, Tr. 568-70) that Plaintiff has: (1) mild limitations with her ability to make judgments on simple and complex work-related decisions and with understanding, remembering, and carrying out complex instructions; (2) moderate limitations with her ability to interact appropriately with the public, supervisors and coworkers; and (3) "marked limitations with her ability to respond appropriately to usual work situations and to changes in a routine work setting." Tr. 83. After summarizing Dr. Dannacher's opinion, the ALJ explained that he found it to be "partially persuasive" because:

> [I]t was generally consistent with, and supported by, the medical evidence record. Dr. Dannacher was an evaluating source whose opinion and findings were supported by her report, and were mostly consistent with the other substantial evidence of record (Exhibits 1A and 3A). Specifically, however, her opinion was only partially persuasive because the records supported moderate limitations for concentration, persistence, and pace, as well as moderate limitations in adapting and managing herself. Notably, the claimant's attention, concentration, and

10

>persistence improved with medication compliance, however, they remained impaired some as reflected by her mental status examinations. Thus, while medication was helpful in improving her symptoms, they did not fully eliminate them. Similarly, the claimant's ability to adapt and manage herself were also impaired. Her treatment notes reflected that she had difficulty dealing with stressors. Some showed there were lapses in personal care, and when her symptoms exacerbated, the claimant was described as irritable, uncooperative, and angry. Additional limitations were supported than what was provided by the examiner. While social restrictions were also supported, the records showed that she remained able to interact appropriately with others.

Tr. 83.

Again, Plaintiff contends that the ALJ does not account for Dr. Dannacher's opinion regarding Plaintiff's ability to respond to usual work situations and changes in the work setting. As an initial matter, the applicable regulation (unlike the prior version) provides in no uncertain terms that an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). At any rate, the ALJ explicitly referenced Dr. Dannacher's opinion regarding the ability to respond to usual work situations and changes, and the ALJ limited Plaintiff's RFC to: (1) "jobs involving simple and repetitive tasks"; (2) "with occasional interaction with the general public, co-workers, and supervisors"; and (3) "jobs with occasional changes of the work setting." The first two limitations are obviously consistent with Dr. Dannacher's opinion, and Plaintiff does not argue otherwise.

With respect to the third limitation, Plaintiff contends that "the ALJ's limitation to 'jobs with occasional changes of the work setting' fails to account for [Plaintiff's] marked limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting." Plaintiff's Motion at 9. But Plaintiff does not explain how this fails to account for Dr. Dannacher's opinion. To be sure, the Medical Source Statement form Dr. Dannacher completed provides the following definition for a "Marked" limitation: "Functioning in this area

11

independently, appropriately, effectively, and on a sustained basis is seriously limited." Tr. 568. But the ALJ not only referenced Dr. Dannacher's opinion in the ALJ's decision; he specifically limited Plaintiff to only occasional changes in the work setting. The wording used may not precisely match the wording in the form completed by Dr. Dannacher, but the ALJ's decision shows that he considered and accounted for the opined-upon limitation contrary to Plaintiff's argument otherwise. *Cf. Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022) (rejecting argument that ALJ's RFC finding needed to contain all limitations discussed by state agency psychologists or explain why such limitations were omitted, and affirming notwithstanding argument that ALJ finding ability to "occasionally interact" conflicted with state psychologists' opinion that claimant could have only "limited and superficial social interaction").

Moreover, as Defendant argues, it was the ALJ who was ultimately responsible for assessing Plaintiff's RFC. 20 C.F.R. § 404.1546(c). And "the ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source because the final responsibility for assessing the RFC rests with the ALJ." *Bullard v. Comm'r of Soc. Sec. Admin.*, No. 8:19-CV-289-T-23MCR, 2020 WL 3668792, at *6 n.10 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 3640477 (M.D. Fla. July 6, 2020); *see also League v. Comm'r of Soc. Sec.*, No. 2:20-CV-650-SPC-NPM, 2022 WL 1085540, at *6 (M.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 703011 (M.D. Fla. Mar. 9, 2022) ("[T]he regulations do not require an ALJ to adopt into the RFC every part of an opinion that he otherwise finds persuasive."); *Young v. Kijakazi*, No. 8:20-CV-1622-SPF, 2022 WL 594271, at *5 (M.D. Fla. Feb. 28, 2022); *Nichols v. Kijakazi*, No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *8

(M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of Dr. Cleary's limitations into the RFC.").

In any event, not only is the ALJ's RFC determination largely consistent with Dr. Dannacher's opinion, but as Defendant notes, the findings of the state agency psychological consultants, which the ALJ found to be persuasive, *see* Tr. 82-83, also constitute evidence supporting the ALJ's determination. *See* Defendant's Motion at 9-10. For instance, as the ALJ explained, one of the state agency psychological consultants found that Plaintiff

> would have difficulty appropriately responding to changes in high-stress and fast-paced work environments, but appeared capable of completing simple routine tasks in most settings, and adapting to simple/gradual changes in the work environment. She explained that the claimant might have difficulty with some work tasks but appeared mentally capable of completing/persisting at simple routine tasks.

Tr. 82-83. In this vein, the ALJ not only limited Plaintiff to "simple and repetitive tasks," but he further limited Plaintiff to "occasional changes of the work setting." Tr. 80. Finding that Plaintiff had the ability to deal with "occasional" changes in a job limited to "simple and repetitive tasks" is obviously supported by the state agency consultant's opinion. Likewise, as the ALJ noted, the other state agency consultant found that Plaintiff "was capable of performing simple, repetitive tasks with brief lapses of focus and in a low stress work environment." Tr. 82. Additionally, that consultant also found that Plaintiff "seemed capable of negotiating usual work hazards and changes." Tr. 56.

Ultimately, the ALJ identified and followed the correct regulation. He discussed the evidence of record, including the opinion evidence and prior administrative medical findings. In evaluating the opinion evidence, the ALJ addressed the persuasiveness of Dr. Dannacher's opinion and discussed the factors of supportability and consistency, just as the application requires. He provided reasons supporting his analysis, and Plaintiff has failed to demonstrate that the ALJ's

13

rationale is not supported by substantial evidence. On the contrary, the ALJ's determination is supported by substantial evidence, including the findings of the state agency psychological consultants.[2]

### B. PLAINTIFF'S CONSTITUTIONAL ARGUMENT

Plaintiff argues that she is entitled to a new hearing because of a constitutional defect in the structure of the Social Security Administration (SSA), which she argues undermined the appointment and authority of the SSA's Commissioner and consequently infected the authority of the ALJ and other portions of the administrative process that determined her case. Her argument fails.

---

[2] Plaintiff also argues that the ALJ committed prejudicial error by not incorporating Plaintiff's "marked limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting" in the ALJ's hypothetical to the VE. Plaintiff's Motion at 8. However, because the ALJ's RFC determination is supported by substantial evidence (for the reasons discussed above), what matters is that the ALJ's hypothetical included all of the limitations that the ALJ ultimately found to exist in Plaintiff's RFC – as opposed to every precise limitation included in the medical opinions and prior administrative medical findings. The hypothetical to the VE plainly did include all of the limitations from Plaintiff's RFC. *Compare* Tr. 80 (finding Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to jobs involving simple and repetitive tasks with occasional interaction with the general public, co-workers, and supervisors. The claimant is further limited to jobs with occasional changes of the work setting."), *with* Tr. 36 (posing a hypothetical regarding a claimant that "does not have any exertional limitations with the following non-exertional limitations. The claimant is limited to jobs involving simple and repetitive tasks with occasional interaction with the general public, co-workers and supervisors. Furthermore, the claimant is limited to jobs with occasional changes in the work setting."). Because Plaintiff has failed to establish error in the ALJ's evaluation of Dr. Dannacher's opinion and in the ALJ's RFC assessment, and because the ALJ's hypothetical included all of the limitations that the ALJ found to exist in Plaintiff's RFC, the VE's testimony constituted substantial evidence upon which the ALJ could rely. *See Walker*, 2022 WL 1022730, at *3 ("In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. However, the ALJ is not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported. In other words, the hypothetical question need not list every symptom but must provide the VE with a complete picture of the claimant's RFC." (internal quotation marks and citations omitted)).

Over the last few years, the Supreme Court has addressed both Appointments Clause[3] challenges and challenges related to the President's removal power.[4] *See Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). In the Appointments Clause context, the Supreme Court has held that "the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official" that is different from the prior official. *Lucia*, 138 S. Ct. at 2055 (citation omitted). In the removal power context, the Supreme Court has held that a for-cause restriction on the President's removal power violates the separation of powers. *See Collins*, 141 S. Ct. at 1783-87; *Seila*, 140 S. Ct. at 2197-207. Nonetheless, it has held that the appropriate remedy in this context, where a party is seeking retrospective relief for an unconstitutional limitation on the President's removal power, is not the same as the remedy in the Appointments Clause context. In other words, a statute that unconstitutionally purports to restrict the President's removal power with respect to an official does not automatically void actions taken by that official (and those under him) where there is no basis to conclude that the official lacked the authority to hold his position. *See Collins*, 141 S. Ct. at 1787-88 & n.24.

Here, Plaintiff contends that 42 U.S.C. § 902(a)(3), which provides that the Commissioner of Social Security "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office," violates the separation of powers. Based on the Supreme Court's decisions in *Collins* and *Seila*, Plaintiff appears to be correct, which Defendant does not

---

[3] "The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018) (citing U.S. Const. art. II, § 2, cl. 2).

[4] "'[A]s a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020) (citation omitted).

genuinely dispute.[5]  Because of the limitation § 902(a)(3) purportedly imposes on the President's ability to remove the Commissioner of Social Security, Plaintiff argues that the ALJ's delegation of authority, which came from the Commissioner of Social Security, is constitutionally defective (and therefore seeks the remedy of a new hearing before a new ALJ).  But in doing so, Plaintiff improperly seeks to apply the Appointments Clause remedy from *Lucia*.  *Collins*, however, makes clear that the same remedy does not apply in this context.

Rather, to be entitled to relief here, Plaintiff must show compensable harm.  *See Collins*, 141 S. Ct. at 1788-89.  The Supreme Court has suggested two situations where a statute violating the President's removal power would cause harm: (1) where "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; and (2) where "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1789.  "This suggestion indicates that it will be very challenging to obtain meaningful retrospective relief for constitutional removability claims after *Collins*."  *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 232 (5th Cir. 2021) (Oldham, J., concurring).

Plaintiff has failed to show any compensable harm.  In her motion, she does not even acknowledge this requirement.  In her reply, she contends that she has been injured because:

- She did not receive a constitutionally valid hearing and adjudication from an ALJ to which she was entitled.
- She did not receive a constitutionally valid decision from an ALJ to which she was entitled.
- She received an unfavorable decision from this constitutionally illicit ALJ adjudication process.

---

[5] *See* Defendant's Motion at 11 ("The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause.").

- She did not receive a constitutionally valid process from the SSA's Appeals Council to which she was entitled.
- She did not receive a constitutionally valid determination by the Appeals Council to which she was entitled.

[DE 26] at 4. But these overgeneralized, conclusory claims, which are all reworded expressions of the same alleged defect, flatly fail to establish harm. Significantly, Plaintiff does not contend that the Commissioner who appointed the ALJ was appointed in contravention of the Appointments Clause, and she provides no other basis to conclude that anything prevented the Commissioner from fulfilling the duties of his office. Moreover, "there is no link between the ALJ's decision . . . and the allegedly unconstitutional removal provisions." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021). Ultimately, because Plaintiff has failed to establish anything even arguably close to the type of harm the Supreme Court envisioned, and because she has failed to show that the ALJ's decision was unlawful, her constitutional argument does not entitle her to any relief.[6] Notably, the other judges in this district who have addressed the same argument Plaintiff raises here have all squarely rejected the argument (as have numerous other judges throughout the country).[7]

---

[6] Justice Kagan's concurrence in *Collins* illustrates particularly persuasively that Plaintiff's argument is misplaced. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("[T]he majority's approach should help protect agency decisions that would never have risen to the President's notice. Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block. But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense. '[P]residential control [does] not show itself in all, or even all important, regulation.' When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." (internal citations omitted)).

[7] *See, e.g., Alicea v. Kijakazi*, No. 21-60760-CIV, 2022 WL 902858, at *8-10 (S.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, 2022 WL 898563 (S.D. Fla. Mar. 28, 2022); *Gutierez v. Kijakazi*, No. 20-CV-25321, 2022 WL 977055, at *8 (S.D. Fla. Mar. 2, 2022), *report and recommendation adopted*, 2022 WL 970864 (S.D. Fla. Mar. 31, 2022); *John v. Kijakazi*, No. 20-

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion [DE 21], **GRANT** Defendant's Motion [DE 24], and **AFFIRM** the final decision of the Commissioner.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 30th day of June 2022.

Jared M. Strauss
United States Magistrate Judge

---

61123-CIV, 2022 WL 718667, at *4-6 (S.D. Fla. Mar. 1, 2022), *report and recommendation adopted*, 2022 WL 715188 (S.D. Fla. Mar. 10, 2022); *Vergara v. Kijakazi*, No. 20-22964-CIV, 2022 WL 769704, at *6 (S.D. Fla. Feb. 23, 2022), *report and recommendation adopted*, 2022 WL 767125 (S.D. Fla. Mar. 14, 2022); *Tucker v. Kijakazi*, No. 21-60943-CIV, 2022 WL 750559, at *11-13 (S.D. Fla. Feb. 8, 2022), *report and recommendation approved*, 2022 WL 742744 (S.D. Fla. Mar. 11, 2022).